Hughes, J.
Petition to contest special election under Beal Local Option Law.
This is a proceeding to contest a special election held in the village of Hillsboro, Ohio, on January 3d, 1905, under what is commonly known as the Beal Municipal Local Option Law, and is on petition of Chas. E. Haynes et al, plaintiffs, v. The Village of Hillsboro, Ohio, et al, defendants, filed January 7th, 1905, to which petition a demurrer was filed by defendants, on the grounds—
1st. That the law providing for such a contest is unconstitutional and void.
2d. That the probate court has not jurisdiction of the subject-matter.
3d. That said petition does not state facts sufficient to constitute a cause of action.
Counsel indicate in the argument that the first and second causes of demurrer are formal so far as this court is concerned and only for the protection of their rights in a higher court.
As to said first cause of demurrer, the constitutionality generally of this law having been upheld by the Supreme Court of Obio, I am not inclined to make a different finding as to any *18 particular section, thereof, and overrule said demurrer as to said first cause.
As to said second cause of demurrer: Article IV, Section 8 of the Constitution of Ohio, after investing the probate court with certain specific jurisdiction, adds, “And such other jurisdiction, in any county, or counties, as may be provided by law. ’ ’
The Beal Law, Section 4364-20Í, provides that the contest of elections held under such law shall be by petition filed in the probate court. Therefore it appears that the probate court has jurisdiction in this matter, and said demurrer is overruled as to said second cause.
¥e come now to the third cause of said demurrer, which resolves itself into the question as to whether or not the village council, at the time it adopted the resolution ordering the special election, had jurisdiction or authority to mate such order? Had the persons who signed the petition, or any of them, the right, without consent of council, to withdraw their names after the petition was filed with council and before said election was ordered? Argument of counsel and authorities cited indicate that the right of petitioners to withdraw their assent is the sole “bone of contention” in this case:
The petition alleges, in part, that on December 5th, 1904, a petition containing the names of five hundred and eighty-six persons was filed with the village council; that the council referred said petition to a committee of three of its members for examination and report; that the number of votes cast at the last preceding municipal election was 1,249; that at a meeting of said council held December 15th, 1904, said committee reported to council that the names of more than forty per cent, of the qualified voters of said village as shown by the last preceding municipal election were found on said petition, and that it contained sufficient names of qualified electors to justify the holding of the election prayed for; that thereupon said council adopted a resolution for said election, and such election was held on January 3d, 1905, and that the vote east at said election was “for said prohibition” 571 and “against said prohibition” 633, being a majority of sixty-two.
Petition further alleges that at the time of the examination of sftid petition by said committee there was presented to said com *19 mittee a paper, or papers, containing the names of 110 of those who had theretofore signed said petition, asking that their names be withdrawn from said petition and that they be not counted as petitioners for said election, but that said committee then refused to allow the names of such petitioners to be withdrawn, and included and counted them as petitioners in the number of qualified voters asking for such election; that said paper or papers containing said 110 names was presented to council and council informed that those whose names were on said paper or 'papers asked to -withdraw their names from the petition for such election and to be counted against the same, but that said council refused to allow said names to be withdrawn or said persons to be counted against said election, and counted said 110 persons as petitioners for said election; that if the names of. said 110 persons had not been counted for said election there would have been less than the required forty per cent, of qualified electors asking for said election, and that the proceedings of council is void and of no effect, and prays that said election may be set aside and held for naught.
The demurrer admits the facts stated in petition, therefore the question raised by said third cause of demurrer and for the decision of the court is purely one of law, i. e., had the 110 persons a right to withdraw their names after petition filed, without consent of council and before said resolution was passed? This question has been ably and well argued pro and con and many authorities cited by counsel on either side in support of their views. A number of Ohio decisions have been cited, and I am of opinion that the Ohio decisions are ample in this matter, and shall confine myself to them, and apply the rule of law as I believe it to be in Ohio, under similar statutes, to the case at bar.
The decisions I shall consider now in connection with this case are: Hays v. Jones, 27 O. S., 218; Grinnell v. Adams, 34 O. S., 44; Dutton v. Village of Hanover, 42 O. S., 215; In re Petition for Special Election in Toledo, 2 N. P,—N. S., 469; Cole v. City of Columbus, 2 N. P.—N. S., 563; Garrett v. County Commissioners, Huggins, J., No. 4583 Highland County Common Pleas (not reported).
A number of foreign and other Ohio decisions have been cited and considered on minor points, but I do not consider them in *20 point in this case in view of the ones I have especially noted.
I shall attempt to analyze the eases above cited according to my judgment of their import and bearing upon this case, and give my conclusion of the whole matter.
Hays v. Jones, 27 O. S., 218:
This I consider the leading Ohio ease on a kindred question of the right of a voter to withdraw his assent and thus defeat the jurisdiction conferred by the original petition. It is a proceeding under an act to amend the act of March 29th, 1867, authorizing county commissioners to construct roads on a petition of a majority of resident land owners along and adjacent to the line of road, passed March 31st, 1868. Under this act the first step toward giving jurisdiction to the county commissioners is the presentation of a petition “by five or more of the land holders whose lands- will be assessed for the expense of the same, ’ ’ and the giving of bond by one or'more responsible freeholders to secure the payment of the preliminary survey and report of the viewers, in case the improvement shall not be finally ordered.
The act of March 29th was further amended May 9th, 1868, and before the final order was made in this case. Section 5 provides-:
“Upon the return of the report mentioned in the last section the commissioners shall, if in their -opinion public utility requires- it, enter upon their records an order that the improvement be made-; but such order shall not be made until a majority of the resident land holders- of the county, whose l-ands are reported as benefited and ought to be assessed, shall have subscribed the petition mentioned in the second section of this act. ’ ’
A petition was signed by five or more resident land holders, bond given, preliminary view had and report made. The question is then made that petitioners- can not withdraw their names after report of view is filed and before final order is made. In such case there may be two petitions, one conferring jurisdiction and power to order and cause to be made the preliminary survey, after which a majority petition may be subscribed conferring final jurisdiction; or the first petition may contain a majority of resident land holders, etc., and if nothing happens to change their original relation up to the time of making the *21 final order, the commissioners are so authorized and empowered, but if at the time such final order is to be made, conditions of petitioners have changed, i. <?., have withdrawn their assent by remonstrance or otherwise, whether majority petition is signed and presented before or after the preliminary view and survey, the commissioners are in possession of the jurisdictional facts which confer upon them the power to make the final order. The court, in discussing this case, say:
“The statute can not mean that, if there is a majority of qualified persons at some time between the commencement of the proceedings and the time final order is to- be made, whether there is such a majority at that time or not, the improvement may be ordered. As held in the first proposition, this jurisdictional- majority must be found in the attitude of asking for the improvement at the time the proposed final order is to be made; and one who has subscribed the petition may, at any time before the board maizes the final order, by remonstrance or other unmistakable sign, signify his change of purpose.”
Such petition may have been subscribed and filed even before the preliminary survey was ordered.
The court further say:
“His [the petitioner’s] assent is within his own control up to the time the commissioners move to make the final order.”
Tins settles clearly the question argued to- the court in case at bar, that such withdrawals must be by and with the consent of council, and clearly indicates that consent of council is not necessary, but that petitioners may as a matter -of right withdraw.
The court further say:
“The statute does not confer jurisdiction upon the commissioners; it designates them as the body upon which jurisdiction man. be conferred; describes the persons and the number who may confer it, viz, ‘but such order shall not be made until a majority of the resident land owners of the county whose lands are reported as benefited and ought to be assessed have subscribed a petition.’ ”
So in the ease at bar, the statute does not confer jurisdiction upon council, but designates the persons and number who may confer it, to-wit, Section 4364-20», “That whenever forty per *22 cent, of the qualified electors of any municipal corporation shall petition the council,” etc., the council shall act.
The court further say that the petitioner could not be silent until after the order had been made for the improvement, and then put in a remonstrance that would avail him anything.
Dutton v. Village of Hanover, 42 O. S., 215:
This was originally a petition in mandamus in common pleas against the village of ITanover, to compel that body to order an election as required by Sections 1633 to 1647, Revised Statutes, on the question of the surrender of its municipal powers. Section 1664 designates the character and number of persons who must sign the petition presented to the council. Section 1635 says:
“The council shall thereupon fix a day and place for holding the election,” etc.
This case went to the Supreme Court on motion for leave to file a petition in error to the district court. The common pleas found in favor of relators in mandamus, and ordered the election held, and an appeal was taken to district court. On trial, the district court found that the number of electors required by statute had signed said petition before it was presented and referred to the committee, but that while the matter was in the hands of the committee a number of signers, sufficient to reduce the petitioners to less than the required number, had, with the consent of the committee, withdrawn their names, so that at the next regular meeting of the council there were a less number of petitioners than required by statute, motion was made to- dismiss the appeal, the court overruled the motion, exceptions were taken and case went to Supreme Court.
The Supreme Court, in commenting on decision of district court, say:
“Did the district court err in holding that persons who signed the petition could withdraw their names therefrom before action had thereon? We think not. When the petition was presented it was the duty of council to take proper steps to ascertain if the signatures were bona fide and if it contained the required number who were electors. For that purpose the same might be referred to a committee and postponé action until the *23 time for such, examination. Between the time the petition was presented and the next regular meeting, at which action was had thereon, several signers withdrew their names. This they had the right to do, the council not having acted thereor.” The district court in its finding states that the petitioners withdrew with consent of the committee. The Supreme Court does not mention consent of committee, but cites 27 O. S., 218, which is quoted herein, and emphatically says petitioners can as a matter of right withdraw before action is taken, and that the required number must be on petition, at the time action is taken.
The court further say: If council bad ordered the election, it may be they (the petitioners) could not then withdraw, but be that as it may, etc., intimating that even then there is a question. The court cite 34 O. S., 44, for authority that it is too late, in such cases, after final order is made. I will take up the case cited in 34 O. S. further along.
In re Petition for Special Election in Toledo, 2 N. P.—N. S., 469, being a petition for special election in Toledo under Brannock Law, O. L., 87. Section 1 of said law says:
“Whenever forty per cent, of the qualified electors of any residence district of any municipal corporation shall petition the mayor of such municipal corporation, or a common pleas judge of the county, for the privilege to determine by ballot, whether the sale of intoxicating liquor shall be prohibited within the limits of such residence district, such mayor or common pleas judge shall order a special election to be held in not less than twenty and not more than thirty days from the filing of such petition.”
It will be noticed that the provisions of this law relative to special elections are very similar to the provisions of the Beal Law, except that petition is filed with the mayor or a common pleas judge. The time for holding the election is fixed in this law, as in the Beal Law. Counsel have attempted to show that 27 O. S. and 42 O. S., are not in point with ease at bar, because no time limit is fixed in either of the state eases. In the'Toledo case, the petition presented to the common pleas judge had 490 signatures, there being at least 920 votes cast in the district at the last general election.
*24 The court says, after disposing of other questions in the case:
‘ ‘ The only remaining question is whether the petition now before me is signed by .forty per cent, of the qualified electors of the'district. Of the 490 signatures of the original petition, three names appear twice each; one petitioner has removed from the district since it was delivered, and I am satisfied that none but actual electors at the time election is ordered can be counted. There remains, therefore, but 485 electors to the original petition, and as the total vote at the last election was- 920, and forty per cent, of this is 368, the election must be ordered unless the activity of interested parties in securing withdrawals is to be- rewarded by having the withdrawals allowed', and the like zeal of others in securing more petitioners since the original petition filed, is held for naught.”
The court holds in the Toledo case that the 130 petitioners who have asked to withdraw therefrom have the right, and that five who withdrew have since asked that they be counted as petitioners, which is accordingly done. The court further hold that by fair analogy to other cases where the courts have held that petitioners have a right to withdraw before final order is made, that the same should’ apply to the Brannock Law, and that petitioners have the right-to withdraw any time before final order is made.
In the Lucas county case, as well as a Montgomery county common- pleas case under the Brannock Law, as to the limitation of time within which election is to be ordered, both courts hold such provision is directory only. In the case at bar I do- not consider it material whether the like time of provision of the Beal Law be directory or mandatory, for the purpose of this hearing, as there is no question made here that the election was not held within the time stated in the law. I do not, however, claim that it is not mandatory. I desire to consider the ease reported in 2 N. P.—N. S., 563, Cole v. City of Columbus, being a petition filed in Franklin County Probate Court to contest an election under thie Brannock Law, in which case Judge Black, the judge of said court, apparently contradicts himself. TIis decision appears to be relied upon by both the eontestors and the eontestees in ease at bar, and has been argued -at length by counsel. It appears that the petition or petitions filed with *25 Judge Rathmell in this Franklin county case were entirely controlled by a committee, which committee was trying to locate a residence district and were not sure of their territory. A petition, however, was filed purporting to have forty per cent, of the required electors of a certain district. Later this petition was withdrawn by a member of the citizen’s committee before acted upon by the judge, and. with his consent. Another member of the committee on the same day wrote a new description of a new and different district on said petition so withdrawn, and refilled the same petition wiiih the- new and different description. The election was then ordered, and held forty days after the original petition had been filed and thirty-one days after the refiling. Judge Black held the time provision as mandatory, and that election could not be legally held more than thirty days after petition was filed, and set the same aside. In further discussing the case relative to the action of said committee, Judge Black says he .does not-doubt the authority of the committee to act in the first instance, i. e., they had full power from the electors to describe a district on the petition signed in blank and to file the petition with the judge, but thait be is of the opinion that the instant the petition was filed thh^obfiibttee bad exhausted its power and were not -authorized -to withdraw it; and that when a petition is once filed it must be -either'-dismissed, because, for some reason it fails to make- a prima, facie case for. an election, or the election must be ordered, as :proyid'ed by statute; that the filing of the petition sets in motion the machinery under the act, and from that moment the-law and not individuals or committees control. „ - ' ' 1 _.
Following close on the' heels of such statement, the court continues: “It is true that persons,] before .the mayor or judge have acted, may 'add their names to or withdraw their names from the petition,” and'cites 42 O. S., 2f5, which case is herein discussed. Continuing, the court says:. “ The adding of names to the petition after ; filing; if the petition already contained forty per cent, of the electors would not in- law have any effect whatever; if a sufficient number withdraw their names to reduce the per cent, below the' required forty per cent., the petition-would, of course, have to'be dismissed, ahd I take it that *26 the reason for not allowing persons to withdraw their names after action has been taken, is, that they are estopped—they have sinned away their day of grace; they did not speak when they ought to have spoken, and will not afterwards be heard to speak.” The court further says this proposition is very different from a person or persons or committee acting without authority. These two statements appear to be contradictory and have been argued to this court in support of both views in case at bar. The distinction made, in my judgment, is that the person or persons or committee referred to are not clothed with power to change the facts; i. e., make a new issue, while a petitioner has it within his own power to withdraw his name any time before final order. The right was within his own control, while certain rights only were delegated to said committee; consequently the decision of Judge Black, in my judgment, so far as it may be in point with case at bar, is>, that petitioners have the right to withdraw their assent, but an unauthorized committee or individual can not withdraw petition and change the state of facts or the issue.
In connection with decision of Judge Black, I desire to consider the decision of Judge Huggins (Highland Common Pleas, Case No. 4583, Garrett v. County Commissioners). It was argued to the court at length, in case at bar, that it was the holding in case No. 4583 that petitioners could not withdraw their names after petition was filed with the commissioners, and as the signers were then found so they must remain. I do not so construe the decision of Judge Huggins. I take it to mean only that new facts and new issues can not be thrown into the case after petition is filed; i. e., the petition must be determined upon the basis of the land owners at the time of filing petition, and excluding new land owners who- might become so by purchase after petition is filed. I take it that he does not say that changes may not be made in the attitude of land owners, but that a change of land owners can not be made and thereby create new issues and a new state of facts.
Grinnell v. Adams, 34 O. S., 44:
This is a petition for alteration Of a county road and is cited as bearing on this case, because the right of *27 petitioners to withdraw was refused'' arid upheld by the court. The proceedings before the county commissioners was "under an act of January 27, 1853, entitled, “An act for opening and regulating roads and highways” and its amendments, and provides “that all applications'for laying out, altering or. vacating any county road ' f-‘ * shall be by petition to the county commissioners, signed- by at least twelve freeholders of the county residing in the vjeinity, ’ ’ etc. ‘ Under this statute, only one petition is authorized,-not as in the 27 O'. S., one to cause preliminary view and latería majority petition. A petition with seventeen signatures washed with the commissioners in this case, fifteen of whom were’ freeholders residing in-the vicinity, etc., which was more than the necessary number to clothe the’ Commissioners with power to act. The commissioners did act, viewers were appointed, made the view and reported favorably.to the proposed alteration. Jurisdiction in this 'case attached’ when'petition was filed and bond given. After view had been had and report made, nine of said petitioners signed a remonstrance against said proposed alteration. The court held in this case that after the bond was given, view had and report made, it was'too late to remonstrate. ,A holding to the contrary would mean that in the case at bar petitioners Could withdraw and defeat the order for election even after resolution passed by council. The court say that in so finding they do not undertake to overrule Hays v. Jones, 27 O. S., 218.
To me the distinction is very clear.. In 34 O. S. case, jurisdiction had been assumed and action taken and practically only confirmation needed, while in 27 O. S., 21$, no action had at all been taken and jurisdiction not assumed. Even if we were to give the contestees the benefit/)£ all they claim on account of 34 O. S., the 42 O. S., 215, passes over it and cites 27 O. S., 218., and 42 O. S. case is so clear and clean cut in its terms that no room for doubt as to the rule established can be entertained.
The language of the Beal Local Option Law is not substantially different from the language of the statutes upon which decisions have been reported and discussed herein. There is nothing to show that it should receive a different construction from the ones already construed by the court. It is presumed *28 that the case in 27 O. S., 218, was known to the Legislature and to the judicial committee framing the law at the time of its passage, yet no different language was inserted in the statute, or any provision adopted which would show that the Legislature meant to provide a different rule of practice.
There is unquestionably a uniform rule established in such cases in Ohio under similar statutes, and a construction which brings this ease within such rule, it seems to me/ should be given.
The requirement of forty per cent, of electors in the attitude of petitioning council is purely jurisdictional; if an election can be ordered, held and sustained with less, it can be so ordered upon the petition of one elector, even without a single signature. If the 110 petitioners who attempted to withdraw could do so without consent of council before action had, and 'as a matter of right—'and I hold they have that right—and did so make known their intentions, as it is admitted they did, then council was wholly without jurisdiction to order the election. It is an elementary principle of law that inferior tribunals of special and limited jurisdiction have no power except that which is directly given, or which is necessary to the exercise of the power specially conferred. Councils of incorporated villages come within the rule, and- when the jurisdiction depends upon a given fact, that fact must exist. A finding by council that a fact exists, when in fact it does not exist, is not conclusive. It has been argued by counsel that if petitioners could withdraw their assent, and such withdrawals reduce the petitioners to less than forty per cent., council would necessarily have to postpone action so that those interested in the petition could secure more signers. It is the privilege of the promoters of a petition for an election under the Beal Law to make sure of the required forty per cent, of qualified voters, making due allowance for possible change of attitude, bearing in mind that when time has come for council to act in the matter, a continuance may not be granted by it, and probably not upheld by the courts' if granted, and that council will either dismiss the petition or order an election.
It is argued that the petitioners have not the opportunity to know what action is being taken by the opponents to petition *29 until too late for petitioners to retaliate. Iñ case at bar, notice of the action of opponents is brought home, to the petitioners, because it is the change of attitude of 110 of the original petitioners, as the probable result of the missionary work of the opponents to such petition, which, gave birth to the contest petition in this case. The law makes such petition, after it is filed, a_ public document and open for inspection, so that its subscribers may be known to the general 'public, and this is the ease whether it be a petition for election in a municipality where the sale of intoxicating liquor as a beverage is then prohibited, and it be a petition for an election upon the expiration of the two years’ limitation, or whether it be a petition for election in a municipality where the sale of intoxicating liquor as a beverage is not then prohibited, either upon the expiration of the two years’ limitation or where no election has ever been had. If in a municipality where ■ it has not been prohibited those who do not want an election have the same right as had the' opponents to the election in this ease, the opponents to local option always having the first chance in such case, for before a village may have local option there must be a petition filed and an election held.
Worley & Wiggins and Steele & Sams, for plaintiffs.
I. McD. Smith, D. Q. Morrow and J. A. Willem, for defendants.
In this case I can only read the law in the light of the decisions of the higher courts herein quoted, and so reading and construing it, I am of the opinion that the 110 persons mentioned in the petition herein who attempted to withdraw their names from the petition for election .had the right to do so, without consent of council; that they should not have been counted by council as electors petitioning for an election; that without counting said 110 electors there was not forty per cent, of the qualified electors of the village of Hillsboro so petitioning for an election, and that council was wholly without jurisdiction to order said special election. Demurrer to said third cause of action is therefore overruled and overruled as to each and every cause stated therein.